421 So.2d 180 (1982)
Nora MATOS, Appellant,
v.
Otsenre E. MATOS, Appellee.
No. 81-1561.
District Court of Appeal of Florida, Second District.
October 1, 1982.
Rehearing Denied November 4, 1982.
*181 Sondra Goldenfarb, Clearwater, and William M. Golson of Baskin & Sears, Clearwater, for appellant.
Stephen C. Booth of Martin, Richmond & Booth, New Port Richey, for appellee.
OTT, Chief Judge.
After a 13-year marriage, the appellee/husband moved out in September of 1978 and temporarily resided  and worked  in his individually owned condominium suite of medical offices. The appellant/wife and the couple's seven-year-old child remained in the rented marital home. The seven-year-old child had been born with various facial abnormalities or deficiencies that had been and would continue to be the subject of medical correction and care.
Although the wife filed this action in October of 1978, previously commenced reconciliation or settlement efforts continued. The wife's motion  or petition  seeking temporary alimony, child support, and an equitable division of the marital property filed contemporaneously with her dissolution petition was never called up for hearing, due in large part to voluntary payments and division hereafter noted.
In March of 1979, the parties apparently having abandoned the marriage, the husband filed his answer and counterpetition for dissolution. The parties continued their efforts to arrive at an amicable settlement of their affairs.
In the meanwhile, the husband secured an apartment and with the wife's knowledge and consent remained in the rented marital home for a week or so while he prepared his rental unit for occupancy. During this period, the wife and their child were seeking and securing rental quarters to effect a move to the wife's family's home town of Pensacola, Florida. The husband, in completing his move, admitted taking some collector's items, furniture, objects of art, and other things he wanted to his separate apartment, although he characterized them as inconsequential and of nominal value.
The wife, upon securing rental quarters in Pensacola, returned, and with the husband's full knowledge  if not consent  hauled the remaining furniture, etc., in a U-Haul trailer to her newly acquired rented quarters in Pensacola.
The wife also took a $13,000 C.D. with her to Pensacola.
During most  if not all  of this extended period, the husband paid a portion of the wife's credit card and other commercial charge accounts, continued medical insurance coverage for his wife and child, paid certain of her automobile expenses, and provided the wife with a monthly stipend of $1,000. The wife was required to pay from the $1,000 all utilities, rent, and household expenses.
Sometime before the final hearing the husband terminated all payments except the $1,000 per month. The wife sold some personal jewelry and other items to provide herself with additional funds.
At the time of the hearing before the master, the wife had approximately $10,000 remaining in the C.D.
The parties' primary  if not only  jointly owned asset, and the source of sharp disagreement as to division and value, was a valuable horological collection. Each party had certain portions of this collection in his or her possession.
All other property  including the wife's 1976 Toyota  was titled solely in the husband. The wife had driven the 1976 Toyota since its purchase and drove herself, the child, and the U-Haul trailer to Pensacola in it.
In his answer and counterclaim, the husband controverted the wife's fitness as a mother, claimed equitable ownership of all *182 property acquired during the marriage, and sought custody of the minor child together with support payments from the wife.
At the outset of the hearing, the parties stipulated that each would file an itemized list of the items of the horological collection that each party acknowledged possessing and that a third list would be filed itemizing certain items of the collection that neither party would admit to having. It was expressly stipulated, however, that neither the division of this jointly owned collection nor its value was to be an issue for consideration or determination by the master or the court. If the parties could not later agree upon a division of the collection, it would be the subject of subsequent proceedings.
All other issues made by the pleadings and all other property matters were submitted to the master for the taking of evidence, his consideration, and determination.
No useful purpose will be served in setting forth the details of the sharp, almost complete disagreement of the parties on all matters. Their disagreement included the following:
1. Whether or not the husband had any interest in the $13,000 C.D. or even if he did whether or not it was given to the wife together with his interest, if any, in the household furniture and other personal property that she took with her to Pensacola;
2. The current values of the furniture and other personal property (other than the horological collection) in the possession of each of the parties in their respective rented residences;
3. The husband's income and cash on hand;
4. The husband's other assets  and their value  including his 1977 Cadillac, several classic sports automobiles he had purchased and at least partially restored during the marriage, and the husband's individually owned condominium suite of offices and its furnishings;
5. The nature, extent, and cost of future medical care for the parties' minor child; and
6. The needs of the wife and child and the ability of the husband to pay.
During the course of the testimony the husband's attorney conceded  at different times  that the 1976 Toyota was the property of the wife; that the wife was a fit and proper mother and entitled to custody of the parties' minor child; and that the husband should be responsible for the child's support including the cost of the child's future medical care, provided he was consulted in advance.
Considerable impeachment of the husband's present testimony, values, and earlier-filed financial affidavits was pursued by the wife's attorney.
In his findings, the master made the following very critical pertinent findings:
1. That the wife has made substantial contributions to the husband's education by being gainfully employed while the husband was attending medical school, and thereby the husband's position and earning ability has been substantially increased.
2. That the husband is capable of paying reasonable support for the parties' minor child, together with any and all necessary medical, dental, and ocular expenses.
3. That the wife is entitled to alimony, and the husband is financially able to pay same.
4. That the wife is in need of, and the husband is able to pay, reasonable attorney's fees and court costs.
5. That in regard to any pending matters involving personal property of the parties, the special master is unable to make any specific findings or recommendations in that no evidence or proof in regard to same has been submitted and, therefore, cannot make any recommendation in regard to any pending matters involving the personal property other than to say that whatever personal property is in the possession of each party should remain the property of such party.
Quite obviously the special master rejected the husband's very liberal opinion of the *183 present value of furniture the wife had taken to Pensacola which largely consisted of furniture the couple had purchased for $900 in Spain during the period the wife was working and putting the husband through medical school. The master found no disparity in the de facto division accomplished by the parties at the time of final separation, well before the hearing. For whatever his reasons  and there was ample evidence to support his conclusion  he found that neither of the parties had any claim to or interest in any property in the possession of the other, including the cash in their respective accounts.
Based purely upon the transcript of the testimony presented at the master's hearing and the objections of the parties to specified portions thereof, the trial judge personally prepared and filed his final judgment in which he adopted most of the master's report. However, the judge departed from certain portions thereof when he made the following findings and determinations:
1. The wife removed $13,000 from jointly held funds at or about the time of the separation and has a substantial portion of those funds remaining. The wife also removed jointly owned furnishings and tangible personal property, some of which were works of art and pieces of ivory and all of which had a value of approximately $45,000. By contrast, that which the husband removed from the home was nominal in terms of the number of items and the value thereof.
2. The wife is in need of child support and the husband is able to pay a reasonable amount. There is also a gross disparity in the reasonable prognostication of the future income-producing capabilities of the parties. The wife should be awarded periodic alimony to supplement her present income potential, and the husband is financially able to contribute a reasonable sum, taking into consideration the lump sum alimony which the wife receives by virtue of this judgment.
A reading of the transcript reveals these conclusions can only be reached by total, unqualified acceptance of the entire testimony, including husband's maximum guess ($45,000) as to the value of the furniture the wife had taken to Pensacola and his lowest value (practically nothing) of what he had kept of the marital home furnishings and/or had in both his condominium-owned offices (where he lived for some months). The court also concluded, contrary to the master, that the wife should be charged with the full $13,000 in the C.D.
Based upon the above findings, the trial judge went on to determine that the wife should be charged with receiving from the husband "lump sum alimony" consisting of the $45,000 of furniture and other personal property plus the $13,000 C.D.
By reason of such lump sum alimony payment by the husband, the trial judge reduced the master's awards of periodic alimony from $150 per week to $500 per month and child support from $150 per week to $450 per month.
When these actions of the trial judge were questioned on motion for rehearing, his reply was:
I don't think that there is anything precluding the court from making a finding based upon the transcript, which would be different from the findings that were addressed by the master. Clearly, the court, I think, has the right and the duty and the obligation to apply the law as understood by the court to what has transpired at the master's hearing.
Truth, veracity, weight, credibility, believability, acceptability, reasonableness, and such like, of the testimony of live witnesses together with the effect, if any, of legitimate impeachment are peculiarly the function and prerogative of the factfinder before whom witnesses personally appear and testify. We thoroughly agree that the trial judge should carefully determine whether or not the master's findings and determinations are supported by substantial, competent evidence or whether there is any other departure from the essential requirements of applicable law. Shaw v. Shaw, 369 So.2d 81 (Fla. 3d DCA 1979). There are no such findings by the trial *184 judge. However, where the trial judge chooses to appoint a master to hear the testimony and make findings of fact and determinations based thereon, the trial judge loses the prerogative of substituting his judgment, call, or determination in lieu of those lawfully reached by the master. His role essentially is the same, in these respects, as those of this court in reviewing the trial judge's findings and determinations had he personally heard the testimony. Harmon v. Harmon, 40 So.2d 209 (Fla. 1949).
Since the parties submitted the testimony to the trial judge in a subsequent proceeding concerning the amount of the fee to be awarded the wife's attorney and, further, since no such testimony was presented to the master, we find no error in the trial judge having reduced the master's fee award to the wife's attorney from $6,000 to $4,500. Again, however, we cannot and do not approve of his "adjustment" of the amount the husband should pay to $2,500 based solely upon his finding  contrary to the master  that the wife had already received an unwarranted "lump sum" alimony of some $58,000 out of which she should pay the remaining $2,000.
The wife has accepted the trial judge's limitations on travel expenses for the child's medical care and his conditions on charging the husband with the medical expenses of the child. Nothing herein shall therefore be construed as modifying these matters in any particular.
We therefore VACATE only those findings or determinations of the trial judge as to lump sum alimony, the amount of child support, the amount of alimony, and the payment of any portion of the fee to her attorney. The final judgment is amended to include the determinations of the master that neither party has established any claim or interest in the property in the possession of the other, that the husband pay all of the fee to the wife's attorney, and that the husband pay $150 per week alimony and $150 per week child support. As so amended, the final judgment is AFFIRMED.
GRIMES and SCHOONOVER, JJ., concur.