972 So.2d 867 (2008)
Charles E. HOBUS, Appellant,
v.
Carolyn C. CRANDALL, Appellee.
No. 2D05-4236.
District Court of Appeal of Florida, Second District.
February 16, 2007.
Rehearing Denied May 31, 2007.
Mark A. Neumaier, Tampa, for Appellant.
Philip S. Wartenberg, Tampa, for Appellee.
KELLY, Judge.
Charles E. Hobus, the former husband in this dissolution of marriage action, appeals from the trial court's order requiring him to sell marital real property in compliance with an order enforcing the parties' final judgment of dissolution. The final judgment incorporated a marital settlement agreement that set out the terms under which the parties' real property was to be sold. The trial court rejected, a general magistrate's[1] report that the former *868 husband had already complied with the order enforcing the final judgment by selling the property to himself. We agree with the former husband that the trial court erred in rejecting the general magistrate's report because in doing so the court imposed obligations on the former husband that were not provided for in the marital settlement agreement. Accordingly, we reverse.
The parties divorced in 1994. The final judgment of dissolution incorporated by reference a marital settlement agreement. The portion of the agreement pertinent to this appeal dealt with the equitable division of the parties' marital real property which consisted of three contiguous parcels of real estate. To effectuate this division, the agreement provided that Carolyn C. Crandall, the former wife, was to sell the first parcel, which consisted of the marital home and surrounding acreage titled in her name, for a minimum sale price of $279,900 and split the proceeds with the former husband. If the former wife's property did not sell after being listed for six months, the agreement required the parties to review the purchase price and consider obtaining a new realtor. The agreement also provided that if the former wife received less than $127,500 in net proceeds upon the sale of that property, the rest of the parties' marital real property, which consisted of a three-acre parcel (the middle parcel) owned by the former wife and a four-acre parcel with a mobile home owned by the former husband, was to be sold and the net proceeds split equally.
Notwithstanding the parties' agreement, the former wife sold the marital home and acreage for $225,000 without consulting the former husband, netting only $76,409.55. This shortfall triggered the provision of the agreement that required the sale of the remaining property. Citing the former wife's unilateral decision to reduce the sales price, thus creating the shortfall, the former husband asked the court not to enforce the portion of the agreement requiring the sale of his property, which was the four-acre parcel and mobile home. The former wife countered with a motion to enforce the final judgment by compelling the sale of the former husband's property. The trial court entered an order denying the former husband's request to relieve him of the obligations imposed by the parties' marital settlement agreement stating:
The Agreement made no provision for dealing with a situation in which the Former Wife received net proceeds of less than $127,000 and she was the cause of receiving a lesser sum (either because the property was over-valued, or she just wanted to sell expeditiously). The courts cannot rescue parties from the unintended consequences of knowingly made, and otherwise binding, contractual obligations.
Accordingly, the court ordered the former husband to sell the mobile home and four acres and ordered the parties together to sell the middle parcel.
After the former husband unsuccessfully appealed that order, the former wife filed a motion to compel the former husband to sell his property within a specified time. The court referred the matter to a general magistrate. At the hearing on the motion, the former husband testified that he had sold the property to himself for $61,396, the market value of the property as determined by the property appraiser's office. The former husband also testified that that value was consistent with the value placed on the land by a third-party appraisal that was done when the former wife sold the marital home and surrounding acreage.
The former wife argued that the former husband had to sell the property to a third party, that the price he set was inadequate, *869 and that he should be required to have it appraised by a qualified appraiser. In her testimony, the former wife acknowledged that the marital settlement agreement did not give her any input into the sales price of the property and that it did not require that the property be sold for a particular price, that it be appraised, that it be listed with a realtor, or that it be sold to a third party. Instead, she pointed to the order enforcing the final judgment and argued that what the former husband had done was inconsistent with the spirit of that order. The former husband, recalling the trial court's earlier refusal to alter the terms of the agreement, countered that the "the spirit of the order is, you guys wrote a bad contract and you're stuck with it."
The general magistrate issued a report recommending that the former wife's motion be denied. The general magistrate found that the former husband was under no obligation to have his four acres and mobile home appraised, listed with a realtor, or sold to a third party and that the sale of the property to himself for $61,396 complied with the order enforcing the final judgment. The former wife filed exceptions to the general magistrate's report contending that the general magistrate had erred as a matter of law in construing the order enforcing the final judgment. The trial court agreed with the former wife and rejected the general magistrate's conclusions, stating that it read the property settlement agreement and the order enforcing the final judgment "to mean the husband cannot sell the property to himself." The court also indicated it would order an appraisal if the parties could not agree on the fair market value of the property, and it ordered the parties to list the property with a realtor. The former husband appeals from this order arguing that the trial court erred in rejecting the general magistrate's report and instead adopting an interpretation of the marital settlement agreement that had the effect of changing its terms.
We first note that the trial court's earlier order enforcing the final judgment, the general magistrate's recommendation, the trial court's order rejecting the general magistrate's recommendation, and now our review on appeal have the underlying common purpose of interpreting the marital settlement agreement which was incorporated into the final judgment of dissolution. A marital settlement agreement entered into and ratified by a trial court is subject to interpretation as a matter of law like any other contract. See Kenyon v. Kenyon, 496 So.2d 839 (Fla. 2d DCA 1986); Ballantyne v. Ballantyne, 666 So.2d 957 (Fla. 1st DCA 1996). Thus, the trial court's review of the general magistrate's interpretation of the marital settlement agreement, and in turn our review of the trial court's order, is de novo. See Johnson v. Johnson, 848 So.2d 1272 (Fla. 2d DCA 2003); Matos v. Matos, 421 So.2d 180 (Fla. 2d DCA 1982).
We agree with the former husband that the trial court erred because its order effectively rewrote the parties' marital settlement agreement. See Robinson v. Robinson, 788 So.2d 1092 (Fla. 4th DCA 2001) (finding that the trial court erred in interpreting a marital settlement agreement to include terms that were not plainly stated in the agreement). The agreement provided a remedy in the event that the former. wife's property sold for less than contemplated. That remedy was that the parties sell all their real property and equally divide the net proceeds. In asking the court to compel the former husband to comply, which was the only matter before *870 the general magistrate, the former wife sought nothing more than to require the former husband to sell the property within a specified period of time. It was only after the former husband testified that he had sold the property to himself that the former wife sought to impose additional obligations on the former husband that she candidly acknowledges are not provided for in the marital settlement agreement.
The former wife attempts to sidestep this reality by arguing that the "intent and spirit" of the order enforcing the final judgment was that the former husband could not sell the property to himself at a price he alone determined. Even if we thought it proper to rely on the "intent and spirit" of that order rather than the unambiguous terms of the marital settlement agreement, we find it implausible that the "intent and spirit" of that order was to impose obligations on the former husband that were not contained in the parties' agreement. As noted by the former husband, the crux of that order was that "courts cannot rescue parties from the unintended consequences of knowingly made, and otherwise binding, contractual obligations." The general magistrate properly rejected the former wife's invitation to "rescue" her, and it was error for the trial court to reject the general magistrate's recommendation and require the former husband to sell, the property to a third party at a price agreed "to by the former wife or determined by an appraiser.[2] Accordingly, we reverse the order on the former wife's exceptions to the general magistrate's report and remand for entry of an order ratifying the report and recommendations.
Reversed and remanded. DAVIS, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
The circumstances of this case are unfortunate and hopefully quite unique. Twelve years after the entry of the final judgment of dissolution of marriage, the parties are still attempting to comply with the terms of their own marital settlement agreement. The former wife sold the marital home at a purchase price far below that contemplated in the agreement without consulting the former husband, and things went downhill from that point. There are earlier orders in this case that now embody the law of the case and also make matters difficult for everyone.
I am not entirely convinced that the marital settlement agreement would have permitted the former husband to sell the property to himself for an unconscionably low price. However, given that the agreement did not forbid a sale to the former husband and the former husband sold the property to himself for its market value as determined by the property appraiser, I concur in this reversal.
NOTES
[1] The trial court referred to the general magistrate as a "general master," the title formerly used in the Florida Family Law Rules of Procedure. In 2004, all references to "general master" were changed in the rules to "general magistrate." See Amendments to Florida Rules of Appellate Procedure, 887 So.2d 1090 (Fla.2004).
[2] We are cognizant of the principle that "[t]he implied covenant of good faith exists in virtually all contractual relationships." Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So.2d 787, 791 (Fla. 2d DCA 2005). The former wife has not argued that the former husband breached the implied covenant of good faith by, for example, selling the property for an unconscionably low price. As noted in the concurring opinion, such a scenario is not before us and might well produce a different result.