961 So.2d 1108 (2007)
Richard H. DORSEY, Appellant,
v.
Debra DORSEY, a/k/a Debra Sementa, Appellee.
No. 2D06-5120.
District Court of Appeal of Florida, Second District.
August 3, 2007.
*1109 Patrick F. Gaffney, Clearwater, for Appellant.
K. Dean Kantaras, Palm Harbor, for Appellee.
CASANUEVA, Judge.
Richard H. Dorsey, the former husband, appeals a postdissolution order requiring him to invade what he claims are exempt assets to pay an alimony arrearage to Debra Dorsey, his former wife. We agree with Mr. Dorsey that the trial court erred in part.
At the time Mr. and Mrs. Dorsey were divorcing, they had a marital debt to the Internal Revenue Service for an undetermined, but likely substantial, amount of unpaid taxes for the years 1997-2001. With the advice of individual counsel, the parties reached a mediated settlement agreement to file joint tax returns for these years and, once their tax liability was determined, to negotiate with the IRS for a repayment schedule. Further, each agreed two marital assets that were titled solely in Mr. Dorsey's name, a Merrill Lynch IRA and a Split-Dollar Agreement with a former employer that would provide substantial funds in the near future, would be used to secure repayments to the IRS, essentially "freezing" these assets for use in satisfying the tax indebtedness. Once the IRS debt was satisfied with these monies, the remaining funds, if any, were to be then equally divided. The marital settlement agreement also provided that Mr. Dorsey would pay Mrs. Dorsey $3000 a month in nonmodifiable alimony until he reached the age of 65.
Later, the parties, with advice of counsel, agreed to modify their settlement agreement in one respect. The new modification provided that the Merrill Lynch IRA, the Split-Dollar Agreement, and a third account, an SCI retirement plan, would be awarded to Mr. Dorsey. In consideration for the award of these marital funds totaling approximately $749,000, Mr. Dorsey agreed to be solely responsible for all the taxes, interest, and penalties resulting from the parties' jointly filed income tax returns for 1997-2001. Additionally, Mr. Dorsey agreed to hold Mrs. Dorsey harmless from all liability to the IRS for these tax years. It was upon these terms that the final judgment of dissolution was entered.
Subsequent to entry of the dissolution decree, Mr. Dorsey suffered both economic and employment setbacks that caused a growing alimony arrearage. Claiming $58,000 in unpaid alimony, Mrs. Dorsey moved to enforce the alimony agreement and for an order holding Mr. Dorsey in contempt.
At the hearing on Mrs. Dorsey's motions, Mr. Dorsey testified about his current financial condition and the status of his repayment plan to the IRS. His income, about $200,000 a year at the time of the dissolution, was now about $36,000 a year. Pursuant to his agreement with the IRS, he paid the government $5000 a month, but interest and penalties continued to accrue on the unpaid balance, which currently exceeded $360,000. Because the parties' settlement agreement required that he use the funds totaling $749,000 to satisfy the IRS debt, he contended that those funds were exempt and could not be used for alimony in derogation of the parties' contract. He was using those funds solely to repay the IRS debt, and the remaining balances were earning interest for future payments to the IRS. He did offer as partial payment of the arrearage $20,000 he had in a separate business account. Mr. Dorsey's evidence was not disputed. Thus, the evidence showed that Mr. Dorsey was not in compliance with his *1110 alimony obligation but was in compliance with the agreement to satisfy the tax liability by using those funds identified and intended by the parties for that purpose.
Relying on Siegel v. Siegel, 700 So.2d 414 (Fla. 4th DCA 1997), the trial court did not find Mr. Dorsey in contempt but did find that he had the financial ability to pay the $58,000 alimony arrearage. To satisfy the alimony arrearage, the trial court ordered Mr. Dorsey to pay Mrs. Dorsey the $20,000 held in the separate business account, with the remaining amount due her paid from the funds set aside to pay the parties' joint IRS indebtedness. We affirm that part of the trial court's order requiring payment of the $20,000 from the separate business account; we reverse that part of the order requiring payment by invading the funds held to satisfy the IRS.
At the time of their dissolution, Mr. and Mrs. Dorsey executed a binding marital settlement agreement as well as binding modifications to that contract. These agreements were subsequently made enforceable by court order. These agreements contained the following mutually binding obligations:
1. Mr. Dorsey would pay $3000 per month as alimony that could not be modified until Mr. Dorsey reached the age of 65 years.
2. The parties identified certain marital assets and agreed that these assets were to be used to pay the parties' joint and substantial tax liability for 1997-2001.
"A marital settlement agreement entered into and ratified by a trial court is subject to interpretation as a matter of law like any other contract." Hobus v. Crandall, 32 Fla. L. Weekly D479, ___ So.2d ___, 2007 WL 486452 (Fla. 2d DCA Feb. 16, 2007). In Hobus, we agreed with the former husband that the trial court erred by effectively rewriting the parties' marital settlement agreement, and we reversed its order that the former husband sell a piece of property under conditions not mentioned in that agreement. Mr. Dorsey brings us a similar error. As we noted in Hobus, "courts cannot rescue parties from the unintended consequences of knowingly made, and otherwise binding, contractual obligations." Id. at D480, at ___. Mrs. Dorsey made a binding agreement with Mr. Dorsey that the exempt monies would be used solely to satisfy the parties' IRS debt. If the unintended consequence of this agreement is that these funds are not available to pay her alimony, neither the trial court nor this court can rescue her from this situation. She must look to other available sources, if any, to satisfy the alimony arrearage.
Finally, in regard to the IRA portion of the exempt funds, we comment on the trial court's reliance on Siegel, 700 So.2d 414. In Siegel, the Fourth District relied on Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), to affirm an order of the trial court requiring the former husband to use IRA monies to pay a purge amount to avoid a finding of contempt. We agree with our sister court that noted that "[u]nder Chapter 61 and Bowen, an IRA is not a safe haven where a former spouse can hoard assets while, at the same time, argue that he does not have the present ability to pay a purge amount in a contempt order arising from the non-payment of obligations due under the chapter." Siegel, 700 So.2d at 415. We find Siegel distinguishable on its facts from the instant situation because of the parties' binding agreement that the IRA, part of the exempt funds, would be used only to satisfy the IRS. Once the IRS debt is satisfied, any remaining balance in that IRA, under Siegel, will be available to Mr. Dorsey to pay alimony.
*1111 We are not unmindful of the fact that Mr. Dorsey also made a binding agreement to pay Mrs. Dorsey unmodifiable alimony of $3000 a month until he reaches 65. However, the final order we review requires him not only to breach the contract but could subject him to penalties, including potential incarceration, for failure to repay the IRS. In such an event, his ability to earn income that could be used to pay the alimony obligation would also be at risk.
Affirmed in part, reversed in part, and remanded for entry of an amended final order in accordance with this opinion.
SILBERMAN and WALLACE, JJ., Concur.