NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ROSE MARIE WELLS, as Personal )
Representative of the Estate of John Scott )
Wells, )
                )
         Appellant/Cross-Appellee, )
                )
v. )      Case No. 2D17-721
                )
SANDRA WELLS, )
                )
         Appellee/Cross-Appellant. )
_____ )

Opinion filed February 14, 2018.

Appeal from the Circuit Court for Pinellas
County; Keith Meyer, Judge.

Jane H. Grossman, St. Petersburg, for
Appellant/Cross-Appellee.

Gregory T. Elliott of Elliott-Berger, P.A.,
Largo, for Appellee/Cross-Appellant.


MORRIS, Judge.

         Rose Marie Wells—as the personal representative (PR) of the estate of

her deceased husband, John Scott Wells—appeals an order on her amended motion to

enforce the final judgment of dissolution of marriage between her deceased husband

and his former wife. The former wife cross-appeals. We reverse the order because the

trial court erred in its interpretation of the marital settlement agreement that was incorporated into the final judgment of dissolution.

John Scott Wells, the former husband, and Sandra Wells, the former wife, divorced in 2001. The final judgment of dissolution incorporated a marital settlement agreement that contained a provision giving the former wife sole possession of a piece of marital property until the parties' daughter finished four years of college:

> REAL PROPERTY: The parties own the home located at 306 22nd Avenue N.E., St. Petersburg, FL, a marital asset titled in the Wife's name. There is no mortgage on this property. The Wife shall have exclusive use and possession of the home through the daughter's minority and college years (4 years post high school). The Husband shall contribute 50% to taxes, insurance, and necessary repairs greater than $500. Upon sale of the home by the Wife, the Husband shall be entitled to 50% of the net proceeds.

The former husband died in 2014. After his death, the PR sought to enforce the final judgment of dissolution, claiming that the former wife was required to sell the property and give the former husband's estate fifty percent of the proceeds since the former wife and former husband's daughter had finished college. The former wife responded that the provision did not require her to sell the home. She also argued that the agreement was not enforceable because the former husband had breached the marital settlement agreement by failing to abide by its terms since 2007 and/or that the parties had abandoned the agreement.

After a hearing, the trial court denied the PR's motion in part, concluding that the agreement did not require the former wife to sell the property. The trial court stated the following:

> Parties are free to contract as they choose. By the unambiguous and clear terms of the contract[,] the [former

wife] was granted exclusive use and possession of the marital home while the child was in college. Thereafter, *if the home was sold by [the former wife]*, the [former husband] was entitled to half of the proceeds. To date, the home has not been sold by the [former wife]. There is no legal basis for the court to deem the express timing of the [the former wife's] contract to be illusory. The [c]ontract will be enforced pursuant to its plain language.

However, the trial court determined that when the former wife does sell the property, the former husband's estate has a remedy:

The [PR] shall be entitled to seek payment of the Final Judgment if the subject residence is sold by the [former wife] at a time when the [PR] still time [sic] to make such a claim. [The PR] is further granted as to the property that is the subject of this [m]otion in the amount equal to "fifty percent of the net proceeds" if [the former wife] ever sells the property.

On appeal, the PR argues that the provision clearly requires the sale of the property after the daughter has graduated college and that the trial court's interpretation of the provision is unreasonable because it ignores the obvious intent of the parties and essentially grants the former wife a life estate in the home.

This court reviews de novo the trial court's interpretation of the contract. See Kaplan v. Bayer, 782 So. 2d 417, 419 (Fla. 2d DCA 2001). "A marital settlement agreement entered into and ratified by a trial court is subject to interpretation as a matter of law like any other contract." Hobus v. Crandall, 972 So. 2d 867, 869 (Fla. 2d DCA 2007). "[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." Ebanks v. Ebanks, 198 So. 3d 712, 715 (Fla. 2d DCA 2016) (quoting Gibney v. Pillifant, 32 So. 3d 784, 785 (Fla. 2d DCA 2010)). However, courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that

- 3 -

does not do so." Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. 2d DCA 2005).

This court's decision in Salyers v. Good, 443 So. 2d 152, 153 (Fla. 2d DCA 1983), provides guidance in this case. In Salyers, the parties' settlement agreement, which was adopted into the dissolution judgment, provided that the husband "shall have the exclusive use and possession of the property . . . until such time as the same is sold" and that "[u]pon the sale of the property, the [w]ife shall be entitled to" a certain amount from the proceeds. Id. This court recognized that "[w]here one spouse has been awarded possession of the marital home as an incident of the other spouse's obligation to support, the nonpossessing spouse cannot obtain partition until the other's right to possession has terminated." Id. (first citing Black v. Miller, 219 So. 2d 106 (Fla. 3d DCA 1969); then citing Pollack v. Pollack, 31 So. 2d 253 (Fla. 1947)). The question was "whether the settlement agreement as incorporated into the dissolution judgment gave the husband a continuing right of possession for as long as he wished." Id.

This court interpreted the "settlement agreement as contemplating that following the dissolution[,] the parties would endeavor to sell the home at a mutually advantageous price and that during the interim the husband was entitled to possession." Id. at 153-54 (relying on Hoemke v. Hoemke, 342 So. 2d 127 (Fla. 2d DCA 1977)). The court did "not read the agreement as giving the husband the right to live in the home for the balance of his life by unilaterally refusing to sell." Id. at 154. But see Turner v. Turner, 599 So. 2d 765, 766 (Fla. 5th DCA 1992) (holding that a similar provision was "unclear as to whether the parties intended for the wife to have temporary possession of the marital home until it is sold").

- 4 -

In this case, under the language of the parties' settlement agreement, the former wife was entitled to "exclusive use and possession of the home through the daughter's minority and college years (4 years post high school)." The provision also contemplates that the property will be sold. The provision is reasonably read to require the sale of the property after the daughter has completed college. As in Salyers, the provision should not be read as giving the former wife the right to live in the property indefinitely. To interpret the agreement as urged by the former wife would render meaningless the provision regarding the former wife's use and possession of the property during the daughter's minority and college years. The language "through the daughter's minority and college years (4 years post high school)" places a limitation on the former wife's exclusive use and possession of the home. In other words, the former wife's exclusive use and possession of the home terminates after "the daughter's minority and college years (4 years post high school)."

In conclusion, the trial court erred in its interpretation of the marital settlement agreement because the agreement requires, now that the daughter has graduated college, that the former wife sell the property "at a mutually advantageous price." Salyers, 443 So. 2d at 153-54.

Having determined that the trial court erred on that issue, we must now address the former wife's arguments on cross-appeal. The former wife first argues that the trial court erred in determining that the PR is entitled to proceeds from the sale of the property because the former husband repudiated the agreement in 2007 by failing to make payments required under the agreement. She contends that she framed the issues of breach and rescission/abandonment and that she presented evidence to

support such defenses. She points to her testimony that the former husband did not pay his obligations for the property as required by the marital settlement agreement.

At the conclusion of the hearing, the trial court did not make any findings regarding the former wife's claims of breach or rescission/abandonment. And in its order, the trial court did not make an explicit ruling on the issues of breach or rescission/abandonment. Because there is no explicit finding or determination on these issues, we remand for the trial court to consider them in the first instance. See Lynn v. Feldmeth, 849 So. 2d 481, 483 (Fla. 2d DCA 2003) ("We leave it to the trial court to decide this issue on remand because to do otherwise would require us to rule on the [issue] in the first instance, which is contrary to our function as a reviewing court."); Akers v. City of Miami Beach, 745 So. 2d 532, 532 (Fla. 3d DCA 1999) ("[T]his court should not ordinarily decide issues not ruled on by the trial court in the first instance.").

The former wife also argues on cross-appeal that the trial court erred in rendering a declaratory judgment or advisory opinion when it ruled that the PR would be entitled to proceeds in the future when the former wife sells the property. This issue is rendered moot by our reversal on the issue raised by the PR.

Reversed and remanded.

LaROSE, C.J., and SILBERMAN, J., Concur.